May it please the Court. Good morning, Your Honors. My name is Richard Tamor, and I represent the defendant and appellant in this matter, Craig Ogans, and with the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Your Honors, under Hicks and Wright, the seizure of the 13 bank cards and credit cards was not authorized by the search warrant in this case, and was therefore unreasonable and unconstitutional, and presumptively so. What happened in this case is that a San Francisco police officer named De Jesus was a quote-unquote extra body during the execution of a search warrant and a homicide investigation, and that search warrant authorized the search for and seizure for bank cards, credit cards with two specific names on them, that being one of the defendant, Craig Ogans, and the other being the name of the alleged victim, Joseph Williams. So, during the course of this search warrant execution, Officer De Jesus, in the garage of the house, in a toolbox in the garage, in an envelope in the toolbox, found 13 bank cards and credit cards. And it's important to note that during the course of the investigation, and at the time of the evidentiary hearing in this matter, Officer De Jesus said he didn't know whether or not they had any evidentiary value at the time he saw them. So, in other words, the incriminatory nature of those cards was not immediately apparent to him. Well, first of all, you don't dispute that Officer De Jesus had a right to search the with the warrant? Absolutely. All right. Absolutely. So, then he calls over his supervisor or somebody who's in charge. Right. He calls over Inspectors Lynch and Perrucci. And what they did, and it's important to note that what they specifically did, and they testified to this, is that they took custody of the credit cards right then and there. And then they noticed they had different names on it. And under those circumstances, as the court has just said, Officer De Jesus did legally search that toolbox. And he had a right. And the two supervisors, or whoever they were, had a right to be there as well, correct? To be there. That's correct. Correct. So, they had no right to look at the credit cards? They had no... Is that your argument? My argument is that they had no authority to look at the credit cards. Why? Because at that point in time, they are not validly executing the search warrant. Why not? Because the determination had... So, they had a right to be there. The search was a proper... You're not challenging the search warrant. No. Right? They had a proper right to be there. They had a proper right to look into the tool chest. And De Jesus had a right to pull out the cards. He had a right to call over his supervisors. They were more familiar with the underlying investigation. And when they looked at the cards, they could tell that it was, you know, fell within the... that it was plainly as part of the broader scheme that he was involved with. Well, Your Honor, but there's actually three elements for that plain view doctrine that you're driving at. And what I'm suggesting is that the third element, which is that the officer had a lawful right of access to those cards, was not present at the point in time where Inspectors Perrucci... So, there was a defined role between Perrucci and De Jesus? It's a... And only Perrucci and the other officer could only act there, be there as, quote,  And there was nothing more than sort of supervise the general operation. They couldn't look at any specific item? If they had been the ones to find those cards without being notified that they were non-responsive to the search warrant, then I think it would be fine. But as the facts are in this case, it constitutes a second search. And under those... But what case do you rely on for that? That is, and it's directly on point, Your Honor. That's United States v. Wright. Well, what about E. Wayne, which comes afterwards? I'm sorry? United States v. E. Wayne, E-W-A-I-N, cited several times in the answering brief. Well, Your Honor, that case... Says a second pair of eyes doesn't make any difference. Well, but the difference, the second pair of eyes doesn't make a difference. But what that means, though, in that context is that they're still validly executing the search warrant at that point. But Wright is on point in this case. What happened in, excuse me, yes, Wright, what happened in Wright is that agents were executing a warrant authorizing the seizure of a driver's license. An agent named Kelly found a small ledger without finding the license. He brought that ledger... You don't need to read the ledger to look for the license. In this case, you've got to read the credit card to see if it's got the wrong name. Well, that's correct. And the initial officer did read it and found it was non-responsive to the search warrant. And what Inspector Perucci did was look at it and determine, and he had to look at it closely. And so... But he saw something apparently that caused him to say, hmm, something seems funny about this. And he, what he needed to do was have the authority to do that. And he didn't under these circumstances... He had the perfect authority to look at the cards and he had to read the cards to see what names were on them. He was allowed to take the cards out of the envelope to look at the cards. It exceeded the search... How? Because, Your Honor, Wright is directly on point. No, it's not. Wright is about saying you can't read a ledger to see if there's something stuck inside the book. In this case, you've got to read the card to see what name is on it. Well, Your Honor, Wright specifically says that Kelly exceeded his authority to search for the license when he took the ledger to the Fransman so that he could inspect its contents. That's at page 799. The case Isaacs interpreting Wright specifically says, and this is a quote from that case, since Kelly, who conducted the initial justifiable search, had no concrete reason to suspect the ledger contained incriminating evidence, the search conducted by Fransman passed beyond the bounds of conduct authorized by the Plain View Doctrine and into the realm of exploratory... Yeah, that's because he had to read the ledger in order to figure out what was there. And they had to... And it wasn't in Plain View without reading the ledger, as Judge Clifton has said. And that's what Inspector Perrucci had to do, is he had to closely inspect those cards. That's exact... No more closely inspect than you had to do to execute the warrant, because you have to read the name on the card to see if it comes within the warrant. And so that's what the first officer did, and something seemed wrong to him or funny to him. So he needs to check it out with somebody who knows more about this case. But the first officer found something suspicious, and that's what led to the second officer. Well... It's not, I'm going to give this to the second officer to let him figure it out. Now, I'm not sure any of that matters anymore after Horton, because both Wright and Isaac come before Horton, and certainly come before Ewing, which says in so many words, another pair of eyes doesn't matter. Well, Your Honor, but in this context, when the initial officer does not know the incriminating nature of the contraband or whatever it is, what has to happen is that the second officers can't just seize it under the Plain View doctrine. What they have to do then is go get a warrant for it. They can't take it under the guise of the Plain View doctrine. What they should have done, they should have called up and got another warrant for it. That would have been proper. That's what should have been done in this case, because it constitutes a second search. And I'd like to reserve the last two minutes. Sure, that's fine. We'll hear from the government. May it please the Court. Good morning, Your Honors. Owen Mardikin, arguing for the United States. The District Court properly denied the motion to suppress in this case, because the ATM cards that the defendant sought to suppress were found in Plain View. There are two key concepts from this Court's decision in Ewing that apply here. The first is the concept that the validity of the search doesn't depend on how many officers are conducting it, but on what those officers are doing. It doesn't matter if one, two, or ten officers see something. If they see the same thing and they're lawfully searching, it makes no constitutional difference. The second concept is that there is no one-look rule for searching. That's why the Court in Ewing said that another pair of eyes doesn't matter. Once an officer legally sees something, the defendant's legitimate expectation of privacy in that thing no longer exists. If another officer looks at the same thing, there is no constitutional violation. Is there tension between Ewing and Wright and Isaac? There is not, Your Honor. Wright distinguishes itself from this case when the Court says, to check the ledger for the license, however, did not require perusal of the ledger's written contents. As this Court noted, flipping through a document in order to see if something is stuck inside the pages, whether it's a credit card or a leaf, is one thing. Opening the document and then reading it is another. Here, the two officers didn't do anything materially different from one another. They simply looked to see what the names were on the cards. There's not even an allegation that the cards were turned over or that there's any kind of additional information that Pierucci got from these cards that de Jesus didn't. The defense interpretation of Ewing here and Horton and this line of cases would really make the execution, I mean, practically would make the execution of search warrants a ridiculous endeavor. In Ewing, this Court recognized that it was a narcotic search warrant and that postal inspector was brought along for a very specific purpose, which was to interpret something that another officer might see in plain view. Which had nothing to do with the narcotics investigation. Correct. But it was okay as long as the narcotics investigation was a bona fide investigation. The fact that they might find some postal evidence, that was just kind of a fringe benefit. Yes, and what Horton says and what the Courts recognize afterwards is that it's okay to anticipate that fringe benefit. It doesn't have to be lucky. Now, that critical distinction makes a lot of, carries a lot of weight here. Because it makes no sense to say, well, it's all right. It doesn't have to be an inadvertent discovery and recognize that officers may bring specialists along with them to look for something that is a little bit outside of the scope of the warrant but is seen in plain view. And then hold, as the defense would have this Court hold, well, they're not allowed to look at anything. Or in the converse, the specialist, the postal inspector has to do the entire search himself. Which makes no sense. Because his is the only pair of eyes that can apparently see the evidence of mail theft. So there's really not tension between these cases. The facts are different. The concept is the same, which is when you have a group of officers who are legally doing the right thing, if one of them sees something and it's significant to another, that's the key distinction. JUSTICE KENNEDY Well, at least one. I confess, I'm beginning to blur. I think it was either Wright or Isaac did express particular concern about a second officer being involved, that the authority provided by the warrant expired after the first officer exercised that authority. That would seem to be in some contention with Ewain suggesting a second pair of eyes doesn't matter at all. Why is it that if the first officer looking in Wright, for example, looking for, I forgot, was it a card or something within a book that was a ledger, would happen in glancing through, see something incriminating, then that officer would be allowed to pursue it. Now, the facts in Wright appear to suggest that wasn't what triggered giving the ledger to somebody else. It was specifically, let's go see if you can find something in there looking at the ledger. But the notion that the authority provided by the search warrant expired after the first officer had exercised the warrant, that seems to be, to me, in some tension with Ewain, which says a second pair of eyes doesn't matter. MR. ZUNIGA Well, I think what happened in the middle is that Horton came out and took away the inadvertence requirement for the Plain View Doctrine. So the court no longer has to worry about whether something was a lucky find or was maybe anticipated, an anticipated find. You know, this, all of the courts in other circuits that have explicitly applied collective knowledge, many of them have done so in a case where a gun is found by one officer and yet it's the other officer who knows that this suspect is a felon, and they put two I don't really need to apply the collective knowledge doctrine here.  ZUNIGA You're asking if the court doesn't need to? MR. ZUNIGA We don't need to do that. MR. ZUNIGA The court doesn't need to. But I think Ewain logically assumes that, because Ewain MR. ZUNIGA Well, but it's a little bit, these cases are a little bit different. I mean, the officers have the right to be there. MR. ZUNIGA Yes. MR. ZUNIGA You're dealing with the officers who actually see the object. You don't have to worry about collective knowledge. You could have some officer who was not even on site and rely on his knowledge under the collective knowledge doctrine, but that's not true. ZUNIGA Or could apply it after the fact. And here, the second officer or pair of officers knew from what they saw. MR. ZUNIGA Right there. MR. ZUNIGA Yes, that's true. This court doesn't have to take that step and affirmatively apply collective knowledge to this case. It doesn't need to go beyond what Ewain and what this court's precedent has held. Those cases, though, acknowledge the practicalities of these searches where you have officers executing the warrant.  ZUNIGA Well, you put all these cases together, I mean, you're right. When you have multiple officers going out, it's perfectly understandable that when they're going to execute a search that they're going to bring as many officers as they need. Some may be more in touch with what the underlying investigation is all about or the details of the warrant, but they have multiple officers there and you've got to recognize the practicalities of what's going on. MR. ZUNIGA Agreed. And that said, I think this court can follow its precedent, understanding the distinction in right and affirm the denial of the motion to suppress this case.  ZUNIGA Thank you.  ZUNIGA Thank you. MR. ZUNIGA Your Honors, unless the courts have any specific questions, I'm just going to be quiet.  ZUNIGA Thank you. MR. ZUNIGA Thank you. MR. ZUNIGA Matter submitted.
judges: Paez, Clifton, Duffy